BECKWITH, trustee, *vs.* McBRIDE & COMPANY.

[Jackson, Chief Justice, being disqualified, did not preside in this case.]

1. By the Code, §3377, trust estates are made liable to suits in courts of law to collect and enforce the payment of claims against them for services rendered, or for property or money furnished for their use, to the same extent as they would be rendered liable in courts of equity.

2. That the trust property described in the declaration consisted of realty, did not make the action such a suit respecting the title to land as could only be brought in the superior court.

3. Where certain members of the vestry of a church, the title to the property of which was in a trustee, caused gas fixtures to be placed in the church building, but it was not shown that the trustee, either personally or through his authorized agents, ever ordered or received the goods, or that the congregation or parish did so, or that they were furnished for the use of the trust estate, which consisted entirely of the church lot, a verdict against the trustee was not supported by the evidence.

(a.) Nothing is decided as to the ability of the trustee in such a case to put a charge upon the trust property, that question not being made by the record.

May 1, 1883.

Trusts.    Equity.    Jurisdiction.    Actions.    Constitutional Law.    Religious Corporations.    New Trial.    Before Judge CLARK.    City Court of Atlanta.    June Term, 1882.

Beckwith, trustee, *vs.* McBride & Company.

Reported in the decision.

HARRISON & PEEPLES; BECKWITH & BRADFORD, for plaintiff in error.

CANDLER & THOMSON, for defendants.

HALL, Justice.

This was a suit at law brought to charge certain real estate in the city of Atlanta, held by the defendant in trust "for the use of the congregation and parish of St. Luke's Church," with the price of certain gas fixtures and other articles, which the plaintiffs, by their amended declaration, alleged "were furnished by the authority of the defendant, and were placed on the premises of the trust estate, and for its use, they being necessary to said trust estate, in that they afforded means of furnishing light, which was essential to the religious services, for which the estate was created."

These essential allegations were denied by the defendant, and the cause being called for trial upon the issues thus formed, the defendant, by his counsel, demurred to the declaration, and for cause of demurrer, assigned,

(1.) Because the declaration sets forth an equitable cause of action, of which the superior court of Fulton county has exclusive jurisdiction.

(2.) Because, by this proceeding, the plaintiffs seek to subject a trust estate to the payment of the claim sued upon, which is an equitable remedy this court is not authorized to administer.

(3.) Because the plaintiffs aver in their declaration that the title to a certain tract of land therein described, is in the defendant, which averment is essential to the plaintiff's action, and involves the title to the said tract of land, thereby ousting the jurisdiction of this court.

This demurrer was overruled by the court, and the defendant filed his exceptions thereto, *pendente lite.* Upon

the trial of the main issues, the jury found a verdict for the plaintiffs, and a motion was made for a new trial, upon various grounds, none of which, in the view we take of the case, are material, except the following :

Because the verdict is contrary to law, is decidedly and strongly against the weight of evidence, and without evidence to support it.

The motion was overruled, and a new trial refused, unless the plaintiffs would write off a portion of the verdict, which they did. To this judgment, overruling said motion and refusing a new trial, exception was taken, and the case was brought to this court.

1. The demurrer, which raised objections to the jurisdiction of a court of law over claims sought to be charged upon trust property, was properly overruled. By the Code, §3377, trust estates are made liable to suits in courts of law to " collect and enforce the payment of claims against them for services rendered them, or for property or money furnished for their use, to the same extent as they would be rendered liable in courts of equity." See cases cited under this section in Code of 1882.

2. Neither do we think the objection to the jurisdiction of the city court, upon the ground that the suit involved the title to land, was maintainable. This was certainly not a suit respecting the title to lands, in the sense attached to those words by the constitution and laws, any more than would be any other suit which might eventuate in fixing a lien upon land. 34 *Ga.*, 53 ; *Ib.*, 510 ; 37 *Ib.*, 346 ; *Powell vs. Cheshire*, February term, 1883, not yet reported* ; Penn *vs.* Lord Baltimore, 2 White & Tudor's Leading Cases and notes, part 2, pp. 308 *et seq.*

3. This verdict should have been set aside, because there was no evidence to support it. There was nothing in this record to show that the trustee, either personally or through his authorized agents, ever ordered or received these goods in question, or that the congregation or parish of St. Luke's did so, or that they were furnished for the use of the trust

*See *ante* p. 357.

estate, which consisted entirely of the lot in question. It is shown, however, that certain members of the vestry of St. Luke's parish made the purchase and had the gas fittings put in the church edifice placed upon the land held in trust, and that they supposed they had authority as a vestry to do so; but these members of the vestry did not constitute that entire body. There was no authority shown from the vestry, as a body, to make this purchase and bind the property held in trust for the use of the congregation and parish; and even if this had been done, it does not appear that the vestry was the agent authorized to act, either for the trustee or congregation or parish. If they had such authority, it should have been shown. The failure to show it authorizes the presumption that it did not exist. It is a well settled rule that what does not appear does not exist. So far as authority from the defendant was concerned, it is shown by the plaintiffs' own testimony that they had "no authority from the trustee;" that "the trustee refused to have anything to do with them." Besides, the defendant's evidence shows that the plaintiffs agreed to look to the individual members of the vestry with whom the contract was made, for their money, and, so far as we can see, this testimony is uncontradicted. The very object in creating this trust was to remove the property from the power and control of the congregation and parish and place it elsewhere. From its very nature, this charitable provision must have a trustee to look after and administer it. This is unlike an ordinary trust; it is perpetual, and the estate conveyed cannot exist without it. Such a manager of charitable donations is not and cannot, from the very nature of things, be a mere dry trustee, charged only with the duty of protecting the title to the property.

These questions were thoroughly examined by this court, and the relations of the trustee and the *cestuis que trust*, and their respective powers over the property, accurately defined in the case of *Beckwith, trustee, vs. The Rector*,

*etc.*, *of St. Philips Church*, determined September term, 1882, and not yet published.*

We decide nothing as to the ability of the trustee, in such a case as the present, to put a charge upon the trust property, because the record does not necessarily make the question; or as to the liability he would incur by such an attempt. If, however, there was nothing peculiar in this class of trusts, and they stood upon the footing of other trusts, there is not enough in this case to subject them to such claims as that set up by the plaintiffs. It is only necessary to cite a few of the many cases furnished by our own reports, to establish this position.

As to the necessity of showing authority from the trustee, 41 *Ga.*, 598; and as to the other requisites to charge trust property, and the extent to which it may be incumbered, 28 *Ib.*, 225; 48 *Ib.*, 365; 53 *Ib.*, 226; 60 *Ib.*, 152. The industry and ability of plaintiff's counsel did not enable him to produce a single case controverting these principles.

It is not necessary to consider a question, made and insisted upon by the counsel for the trustee, before this court, that the subject-matter of this claim, as appears from the record, is *res adjudicata*; indeed, it would, as we conceive, be improper to do so, as no such defence was made or passed upon by the lower court.

Judgment reversed.